Robert Modica [NJ Bar No. 04463200]
GORDON REES SCULLY MANSUKHANI, LLP
18 Columbia Turnpike, Suite 220
Florham Park, NJ 07932
Telephone No.: (973) 549-2500

*Attorney for Defendant*
CMA CGM. S.A.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CMA CGM S.A., <br><br> Plaintiff, <br><br> vs. <br><br> BIOMASS PRO, INC., <br><br> Defendant. | Case No.: |

**COMPLAINT**

COMES NOW Plaintiff, CMA CGM S.A. ("CMA"), and its Complaint and causes of action against Defendant BIOMASS PRO, INC. ("BIOMASS" or "DEFENDANT"), and alleges as follows:

**JURISDICTION AND VENUE**

1. This is a maritime claim for breach of contract and unpaid detention, demurrage, storage, destruction and/or other costs pursuant to ocean bills of lading and an ocean carrier's tariff and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. §

1

1333(1).  It also presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 *et seq*.

2. In the alternative, as there is complete diversity between CMA and BIOMASS and the amount in controversy exceeds jurisdictional amount set by 28 U.S.C. § 1332, the prerequisites for diversity jurisdiction under 28 U.S.C. § 1441(b) are met and this Court is vested with subject matter jurisdiction over this action.

3. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) in that BIOMASS' place of business is within the judicial district of this Court. Venue is also proper in this Court as CMA and BIOMASS have agreed that suit shall be brought in the United States District Court for the District of New Jersey.

## PARTIES

4. Plaintiff CMA is now, and at all material times was, a foreign corporation duly organized and existing under the laws of France with a principal place of business at 4 Quai d'Arenc, 13002 Marseille, France. CMA was, and is, an ocean carrier and common carrier of goods for hire on ocean-going vessels between United States ports and foreign ports.

5. Defendant BIOMASS is now, and at all material times was, a corporation organized and existing under the laws of New Jersey, with its principal place of business at 118 Fairfield Drive, Paramus, New Jersey 07652.

6. CMA alleges that there may be additional entities or individuals that may be responsible in some manner for the occurrences and injuries alleged in this Complaint.  Their names and capacities are currently unknown to CMA at this time. CMA will amend this Complaint to add such additional parties when the same have been ascertained.  CMA is informed, believes and thereon alleges that each additional entity or individual is liable for the acts and/or omissions as set forth

below, and that CMA's rights against such additional entity or individual arises from such acts and/or omissions.

## FACTUAL BACKGROUND

7. Between July and August 2018, BIOMASS contracted with CMA for the ocean carriage of eighty-four (84) containers (the "Containers") of woodwaste from New York, United States to Port Qasim, Pakistan under seven (7) CMA Bills of Lading (the "CMA Bills") as follows:

a. CMA CGM Bill of Lading NAM3146952 dated July 28, 2018 with container nos. APHU7007488, CMAU7322826, CMAU4974754, CMAU5518002, CMAU5005268, TCNU4201570, APHU6810113, TCLU4804847, APHU6234770, CMAU5468600, FSCU8386007, and TEMU7784430 shipped aboard the M/V *APL ANTWERP* ("Shipment 1");

b. CMA CGM Bill of Lading No. NAM3166549 dated July 28, 2018 with container nos. CMAU5134666, APHU6445073, BMOU6734045, AMFU8729250, SEGU4755093, SEGU4221077, APHU6679549, APHU6945130, CMAU4125470, GESU5679218, SEGU6211150, TEMU6610768, TCNU4651881, TCLU9692551, TCKU9722345, and INKU2659811 shipped aboard the M/V *MOL COURAGE* ("Shipment 2");

c. CMA CGM Bill of Lading No. NAM3147402 dated August 3, 2018 with container nos. CMAU4796924, BMOU4349179, GAOU6068204, BMOU6391666, ECMU9664841, CMAU4057668, GESU5466228, CMAU4886782, CAXU9348731, BMOU6406637, CMAU5655556, and CMAU4514830 shipped aboard the M/V *OOCL WASHINGTON* ("Shipment 3");

    d. CMA CGM Bill of Lading No. NAM3160170 dated August 3, 2018 with container nos. GESU6865053, TCLU6547230, CMAU7573919, CMAU5677107, APHU6342100, GESU6684965, CMAU4553159, TCNU6084004, CMAU7243753, CMAU4193704, CAIU7518729, and CMAU7263600 shipped aboard the M/V *OOCL WASHINGTON* ("Shipment 4");

    e. CMA CGM Bill of Lading No. NAM3159736 dated August 11, 2018 with container nos. ECMU9162231, DFSU6389146, CMAU4605967, TCNU4613388, TGHU9503220, CMAU7362304, CAXU8131741, CMAU5103813, FCIU8763992, FSCU9814178, TGHU9405809, and TCNU3638904 shipped aboard the M/V *MOL COURAGE* ("Shipment 5");

    f. CMA CGM Bill of Lading No. NAM3207388 dated August 18, 2018 with container nos. CMAU7823094, APHU6402699, CMAU7537260, CMAU7044920, APHU6612782, TCNU3489523, TCNU3489523, TEMU6465295, CAIU9695600, and TCLU1669832 shipped aboard the M/V *TENO* ("Shipment 6"); and

    g. CMA CGM Bill of Lading No. NAM3206012 dated August 18, 2018 with container nos. ECMU9695713, CMAU4926170, APHU6964823, BMOU4012830, CMAU4673998, FCIU9325331, CMAU7343747, TEMU7523966, CAIU9468951, TGHU9316131, and TCLU8692177 shipped aboard the M/V *TENO* ("Shipment 7").

    8. CMA received the Containers for Shipments 1 through 7 in New York, United States carried the Containers to Port Qasim, Pakistan pursuant to the terms and conditions of CMA Bills.

4

9. At all material times, BIOMASS was the named shipper under the CMA Bills, and thus qualifies as a "Merchant" under Clause 1 of the Terms and Conditions of the CMA Bills.

10. BIOMASS was the entity for whose account the transportation services were provided by CMA, was the party that received and benefitted from the transportation services provided by CMA, and was the entity responsible for payment of charges relating to the Containers.

11. BIOMASS tendered the Containers for Shipments 1 through 7 to CMA for transportation between the United States and Pakistan for which freight and other charges were lawfully incurred pursuant to the terms of the CMA Bills and/or applicable tariff(s).

12. CMA's Bill of Lading Standard Terms and Conditions (as applicable to the relevant CMA Bills) provides the following:

> **"Merchant"** includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this Bill of Lading and anyone acting on behalf of any such Person.
>
> ...
>
> **11.    NOTIFICATION AND DELIVERY**
>
> ...
>
> (2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's Applicable Tariff (see Clause 2). If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and / or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall cease, and the costs of such storage (if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

(3) If, whether by act or omission, the Merchant directly or indirectly prevents, delays or hinder the discharge or the delivery of the Goods, any costs, expenses or liability so resulting shall be for its full account.

(4) If the Merchant fails to take delivery of the Goods within ten days of delivery becoming due under Clause 11 (2), or if in the opinion of the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility whatsoever attaching to him, sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this Bill of Lading.

...

## 13.   LIEN

The Carrier its servants or agents shall have a lien on the Goods and any documents related thereto and a right to sell the Goods whether privately or by public auction for all Freight (including additional Freight payable under Clause 12), primage, deadfreight, pre-Carriage and/or inland Carriage whatsoever, demurrage, Container demurrage and storage charges, detention charges, salvage, general average contributions and all other charges and expenses whatsoever which are for the account of the Goods or of the Merchant and for the costs and expenses of exercising such lien and of such sale and also for all previously unsatisfied debits whatsoever due to him by the Merchant. The Carrier, its servants or agents shall also have a lien on the Goods carried under this Bill of Lading and any document relating thereto for all sums including Freights and charges as above mentioned due and outstanding on any other Contracts for the Carriage of Goods concluded between the Carrier, its servants or agents and the Merchant, at any time where such sums or Freights remains due and unpaid. If the goods are unclaimed during a reasonable time, or whenever in the Carrier's opinion, the Goods are likely to become deteriorated, decayed or worthless, the Carrier may, at its discretion without responsibility whatsoever, auction, sell, abandon or otherwise dispose of such Goods solely at the risk and expense of the Merchant. Nothing in this Clause shall prevent the Carrier from recovering from the Merchant the difference between the amount due to him by the

Merchant and the amount realised by the exercise of the rights given to the Carrier under this Clause.

. . .

## 26.  SHIPPER'S / MERCHANT'S RESPONSIBILITY

(1) All of the Persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this Bill of Lading, and remain so liable throughout Carriage notwithstanding their having transferred this Bill of Lading and/or title to the Goods to any third party. Such liability shall include but not be limited to court costs, expenses and attorney's fees incurred in collecting charges and sums due to the Carrier.

(2) The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods and contain no contraband.

(3) The Merchant shall indemnify the Carrier against all loss, damage, fines and expenses arising or resulting from any breach of any of the warranties in Clause 26 (2) hereof or from any other cause in connection with the Goods for which the Carrier is not responsible.

. . .

## 31.  JURISDICTION

All claims and actions arising between the Carrier and the Merchant in relation with the contract of Carriage evidenced by this Bill of Lading shall be brought before the Tribunal de Commerce de Marseille and no other Court shall have jurisdiction with regards to any such claim or action. Notwithstanding the above, the Carrier is also entitled to bring the claim or action before the Court of the place where the defendant has his registered office.

13. Between August 30, 2018 and September 20, 2018, the Containers for Shipments 1 through 7 arrived and were discharged in Port Qasim, Pakistan and made available for collection.

14. The Containers subsequently remained idle in Port Qasim, Pakistan as BIOMASS has refused to take delivery of the Containers and/or provide any other shipping instructions for the Containers in Shipments 1 through 7.

15. On or about May 20, 2019, CMA disposed of the cargo in the containers for Shipment 2.

16. To date, BIOMASS has refused to take delivery of the Containers and/or provide any other shipping instructions for the Containers in Shipments 1 and 3 through 7.

17. Accordingly, the Containers for Shipments 1 and 3 through 7 remain idle at the marine terminal in the Port of Qasim, Pakistan, thereby accruing various daily and other charges including detention and demurrage.

18. Having affected delivery of the Containers, CMA fully performed all of its obligations under the CMA Bills.

19. As a result of BIOMASS' failure to take delivery of the Container, and/or provide any other shipping instructions, CMA has incurred damages, liabilities, charges, expenses, fees and costs for storage, detention, demurrage, and destruction.

20. Under the terms of the CMA Bills and/or applicable tariffs, BIOMASS is obligated to pay these costs, damages, and expenses due and owing to CMA.

21. As of May 22, 2019 these costs, damages and expenses due and owing by Defendant to CMA total US$2,162,039. These costs, damages and expenses continue to accrue while the Containers remains idle.

22. CMA fully performed all of its obligations under the CMA Bills. BIOMASS received and benefited from the transportation services provided by CMA, and is responsible for payment of all these various damages, expenses and costs relating to the idle containers for Shipments 1 through 7 and the destruction of the cargo in the containers for Shipment 2.

## FIRST CAUSE OF ACTION

(For Breach of Maritime Contract)

23. CMA refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 22 above.

24. CMA transported and carried the Containers for Shipments 1 through 7 at the request and for the benefit of BIOMASS, in accordance with the terms and conditions of the CMA Bills.

25. CMA fully performed all of its obligations under the CMA Bills and carried the Containers from New York, United States and successfully discharged the Containers in Port Qasim, Pakistan.

26. Under the terms of the CMA Bills and applicable law, BIOMASS was required to provide shipping instructions and/or accept delivery of the Containers within the time provided for in CMA's Bills, and agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses and fees arising from or resulting from its failure to provide shipping instructions and/or accept delivery of the Containers.

27. Under the terms of the CMA Bills and applicable law, BIOMASS agreed to be liable and responsible for any and all detention, demurrage, destruction and other charges due under the CMA Bills.

28. BIOMASS breached the terms of the CMA Bills by failing to provide shipping instructions and/or accept delivery of the Container, and by failing to pay CMA the damages, liabilities, detention, demurrage,

destruction, and other related expenses and fees arising from its breach or breaches of the CMA Bills.

29. As a proximate cause of BIOMASS' breach or breaches of the CMA Bills, breach of warranty, and the matters set forth herein, CMA has incurred, and BIOMASS is liable to CMA for, damages in the amount exceeding US$2,162,039. These costs, damages and expenses continue to accrue while the Containers for Shipments 1 and 3 through 7 remain idle.

## SECOND CAUSE OF ACTION

(Money Due Under Marine Tariff)

30. CMA refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 29 above.

31. CMA transported and carried the Containers for Shipments 1 through 7 at the request and for the benefit of BIOMASS, and in accordance with the terms and conditions of the CMA Bills and subject to the rates and charges in its tariffs on file with the Federal Maritime Commission.

32. Under the said tariffs, CMA is required to collect and is entitled to recover from BIOMASS, and BIOMASS is required to pay CMA, all unpaid demurrage, detention, destruction, port and terminal storage charges, and any other damages, liabilities, charges, penalties, costs, expenses and fees arising from the carriage of the Container, as well as BIOMASS' failure to provide required shipping instructions and/or accept delivery of the Containers.

33. Despite demand for payment, BIOMASS has failed to pay CMA amounts due under the tariffs and tariff compensation is due, owing and unpaid to CMA from BIOMASS in an amount exceeding US$2,162,039. Additional charges continue to accrue in accordance with the

terms of said tariffs, together with attorneys' fees, costs and expenses incurred in collecting said charges.

## THIRD CAUSE OF ACTION

(Negligence)

34. CMA refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 33 above.

35. At all material times herein, BIOMASS owed CMA a legal duty to exercise due care to provide required shipping instructions and/or to accept delivery of the Containers for Shipments 1 through 7 in Port Qasim, Pakistan.

36. The legal duty of BIOMASS to CMA arose because BIOMASS is a party to the CMA Bills. The legal duty of BIOMASS to CMA also arose independently of the CMA Bills because of many factors, including, without limitation, the foreseeability of harm to CMA from its acts and omissions, the degree of certainty that CMA suffered injuries, the closeness of the connection between BIOMASS' conduct and the injury suffered.

37. BIOMASS breached its duty of care by, inter alia, failing to provide required shipping instructions and/or accept delivery of the Containers in Port Qasim, Pakistan, or otherwise arranging for the Containers' delivery.

38. As a proximate result of the negligence of BIOMASS, CMA has incurred, and BIOMASS is liable to CMA for, additional freight, storage, demurrage, detention, destruction, liabilities, charges, penalties, costs, expenses and fees in an amount exceeding US$2,162,039, plus any additional damages and costs as they continue to accrue.

## **PRAYER**

WHEREFORE, Plaintiff CMA prays for judgment against BIOMASS as follows:

1. That the Court order judgment in favor of CMA and against the BIOMASS in an amount not less than US$2,162,039 and for any and all additional freight, storage, demurrage, detention, destruction, liabilities, charges, penalties, other costs, expenses and fees caused by BIOMASS's breach or breaches of the CMA Bills and/or applicable tariffs and/or negligence, for all amounts due under CMA's tariffs, as well any additional damages and costs that continue to accrue at an amount to be established at trial;

2. That the Court award CMA its attorneys' fees, costs and expenses incurred as a result of BIOMASS' breach or breaches and/or in collecting the sums due from BIOMASS;

3. That the Court award CMA interest on all of the above as well as its costs of suit; and

4. That the Court award such other and further relief as the Court deems just and proper.

Dated:     June 11, 2019

                                             Respectfully Submitted,

                                             GORDON REES SCULLY
                                             MANSUKHANI, LLP

                                   By: /s/ Robert Modica
                                             Robert Modica
                                             Attorneys for Plaintiff